**BRITAMCO UNDERWRITERS, INC., Plaintiff,**

v.

**John J. STOKES, Jr., Jack Stokes' Old Ale House II, and Dennis Barton, Defendants.**

Civ. A. No. 94–6994.

United States District Court, E.D. Pennsylvania.

April 5, 1995.

R. Bruce Morrison, Conrad J.J. Radcliffe, Audrey J. Copeland, Marshall, Dennehey, Warner, Coleman and Goggin, Philadelphia, PA, for Britamco Underwriters, Inc.

William M. Connor, David S. Senoff, Billet and Connor, Philadelphia, PA, for John J. Stokes, Jr., Jack Stokes' Old Ale House, II.

Philip L. Blackman, Stacey L. Schwartz, Schwartz & Blackman, Philadelphia, PA, for Dennis Barton.

## ORDER & MEMORANDUM

KATZ, District Judge.

**AND NOW,** this 5th day of April, 1995, upon consideration of the Motion Of Plaintiff Britamco Underwriters, Inc. For Judgment On The Pleadings And To Dismiss Counterclaim and the defendants' respective responses, it is hereby **ORDERED** that plaintiff's Motion is **GRANTED.**[1]

## I. BACKGROUND

Britamco Underwriters, Inc. ("Britamco"), initiated this declaratory judgment action Pursuant to 42 Pa.C.S.A. § 7532, *et seq.*, seeking a declaration that it has no duty to defend or indemnify its insureds in a state court action brought by Dennis Barton against John J. Stokes, Jr. and his establishment, Jack Stokes' Old Ale House II (the "Ale House").[2] In the state court action, Barton seeks damages for injuries resulting from an alleged assault and battery by the Ale House's "bouncer/doorman." Pl.'s Mot.

Ex.E. Britamco contends that Barton's claims are not covered by the insurance policy at issue (the "Policy") for two reasons. Britamco's first contention is that the assault and battery out of which Barton's claims arise is not an "occurrence," as that term is defined in the Policy and, accordingly, injuries arising therefrom are not covered by the Policy. *See Terra Nova Ins. Co., Ltd. v. North Carolina Ted, Inc.,* 715 F.Supp. 688, 691–92 (E.D.Pa.1989) (citing *Gene's Restaurant, Inc. v. Nationwide Ins. Co.,* 519 Pa. 306, 548 A.2d 246 (1988)); *Terra Nova Ins. Co., Ltd. v. Thee Kandy Store, Inc.,* 679 F.Supp. 476 (E.D.Pa.1988). Britamco's second contention is that Barton's claims are expressly excluded from coverage under the language of the Policy's assault and battery exclusion. *See Britamco Underwriters, Inc. v. Grzeskiewicz,* 433 Pa.Super. 55, 639 A.2d 1208, 1211–12 (1994).

## II. ANALYSIS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).[3]

### A. The Duty to Defend

Britamco seeks discharge of both its duty to defend and its duty to indemnify.[4]

---

1. Defendants' counterclaim was dismissed by Stipulation of March 7, 1995.

2. Pennsylvania law applies in this diversity case. *Shields v. Consolidated Rail Corp.,* 810 F.2d 397, 399 (3d Cir.1987) (federal court sitting in a diversity case must apply the choice of law rules of the forum state); *Compagnie des Bauxites de Guinee v. Argonaut–Midwest Ins. Co.,* 880 F.2d 685 (3d Cir.1989) (citing *Griffith v. United Airlines,* 416 Pa. 1, 203 A.2d 796 (1964)). This case concerns a Pennsylvania insured, an insurance policy purchased in Pennsylvania, and an underlying action by a Pennsylvania claimant filed in a Pennsylvania state court. Pl.'s Mot.Exs. B, E.

3. When ruling on a motion for summary judgment, the court must construe the evidence and any reasonable inferences drawn therefrom in favor of the non-moving party. *Tiggs Corp. v. Dow Corning Corp.,* 822 F.2d 358, 361 (3d Cir. 1987); *Baker v. Lukens Steel Corp.,* 793 F.2d 509, 511 (3d Cir.1986).

4. On September 23, 1994, in response to the insured's request for coverage in the underlying state court suit, Britamco's claims adjuster issued a "Reservations of Rights" letter to the insured stating that it would initiate the defense of the state court suit without prejudice to its right to withdraw in accordance with the terms of the Policy. Pl.'s Mot.Ex. F.

The duty to defend is a distinct obligation separate and apart from the duty to indemnify. *Erie Ins. Exchange v. Transamerica Ins. Co.*, 516 Pa. 574, 582, 533 A.2d 1363, 1368 (1987). The duty to defend arises whenever claims asserted by the injured party potentially come within the coverage of the policy, *Gedeon v. State Farm Mutual Automobile Ins. Co.*, 410 Pa. 55, 56, 188 A.2d 320, 321 (1963), while the duty to indemnify arises only when the insured is determined to be liable for damages within the coverage of the policy. *See, e.g., Employers Reinsurance Corp. v. Sarris*, 746 F.Supp. 560, 566–568 (E.D.Pa.1990). It follows then, that when the claims in the underlying action have not been adjudicated, the court entertaining the declaratory judgment action must focus on whether the underlying claims could potentially come within the coverage of the policy. *Air Products and Chemicals, Inc. v. Hartford Accident and Indemnity Co.*, 25 F.3d 177, 179 (3d Cir.1994).[5] If there is a possibility that any[6] of the underlying claims could be covered by the policy at issue, the insurer is obliged to provide a defense at least until such time as those facts are determined, and the claim is narrowed to one patently outside of coverage. *C. Raymond Davis & Sons, Inc. v. Liberty Mut. Ins. Co.*, 467 F.Supp. 17, 19 (E.D.Pa.1979). On the other hand, if there is no possibility that any of the underlying claims could be covered by the policy at issue, judgment in the insurer's favor with regard to the duty to defend and indemnification is appropriate. *See, e.g., Germantown Ins. Co. v. Martin*, 407 Pa.Super. 326, 595 A.2d 1172 (1991), *alloc. denied*, 531 Pa. 646, 612 A.2d 985 (1992). Therefore, the operative question is whether the allegations in the complaint could potentially fall within the coverage of the policy. *Gedeon* 410 Pa. at 56, 188 A.2d at 321; *Air Products*, 25 F.3d at 179.[7]

### B. The Policy's Terms

The insurance policy at issue between Britamco and the Ale House contains the following provision and definition:

> The Company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of:
>
> A. **bodily injury** or
>
> B. **property damage**
>
> to which this insurance applies caused by an **occurrence**....
>
> **"occurrence"** means an accident, including continuous or repeated exposure to conditions, which results in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the insured.

Pl.'s Mot.Ex. B at 000033, 000013 (emphasis original). The Policy also contains the following exclusion:

---

**5.** In determining the extent to which an insurer owes its insured an obligation to defend, the law of Pennsylvania is based on two principles. First, the law looks to the four corners of the complaint to define the claim. *United Servs. Auto. Ass'n v. Elitzky*, 358 Pa.Super. 362, 368, 517 A.2d 982, 985 (1986). Second, the issuer of a liability insurance policy has a duty to defend its insured "when the allegations in the complaint against it could potentially fall within the coverage of the policy." *Air Products*, 25 F.3d 177, 179 (3d Cir.1994). My reconciliation of these two notions is that a pleading entitles the insured to a defense if it could reasonably be amended to state a claim under the policy. *Safeguard Scientifics, Inc. v. Liberty Mut. Ins. Co.*, 766 F.Supp. 324 (E.D.Pa.1991), *aff'd in part without op.*, 961 F.2d 209 (3d Cir.1992) (table).

**6.** In addition, an "insurer is obliged to defend the entire claim if some of the allegations in the complaint fall within the terms of coverage and others do not." *C. Raymond Davis*, 467 F.Supp. at 19.

**7.** In addressing this question, the court may not go beyond the face of the underlying complaint and entertain evidence that coverage will not be triggered in the underlying action. *Air Products*, 25 F.3d at 180. In *Air Products*, the court held that, in a duty to defend action, evidence may be introduced to determine if an exception to an exclusion applies (to show coverage), but evidence may not be introduced to determine that an exclusion applies (to show no coverage). Compare *Northern Ins. Co. v. Aardvark Assocs.*, 942 F.2d 189 (3d Cir.1991) (insured has burden to prove the allegations fell within the "sudden and accidental" exception to a pollution exclusion) with *Air Products*, 25 F.3d at 180 ("when allegations may or may not fall within the exclusion (and therefore the coverage), the insurer is required to defend" citing *Safeguard*, 766 F.Supp. 324).

Actions and proceedings to recover damages for bodily injuries or property damage arising from the following are excluded from coverage, and the Company is under no duty to defend or to indemnify and insured in any action or proceeding alleging such damages:

1. Assault and Battery or any act or omission in connection with the prevention or suppression of such acts;

2. Harmful or offensive contact between or among two or more persons;

3. Apprehension of harmful or offensive contact between or among two or more persons; or

4. Threats by words or deeds.

Regardless of degree of culpability or intent and without regard to:

A. Whether the acts are alleged to be by or at the instruction or at the direction of the insured ...

B. The alleged failure of the insured, or his officers, employees, agents or servants, in the hiring, supervision, retention or control of any person, whether or not an officer, employee, agent or servant of the insured; [or]

C. The alleged failure of the insured or his officers, employees, agents or servants to attempt to prevent, bar or halt any such conduct.

Pl.'s Mot.Ex. B.

### C. The Underlying Claims

In the underlying state court action, Barton makes the following allegations:

9. ... Plaintiff sustained serious and permanent injuries as more fully set forth hereinafter when he was placed in imminent apprehension of being hit and pushed and was violently hit, struck, pushed and thrown by the bouncer/doorman at the bar/tavern, who was employed by the Defendants and who was acting within the scope of his authority and within the course of his employment.

10. This conduct by Defendants' employee as stated hereinbefore constituted an assault and battery to Plaintiff for which Defendants are responsible ...

19 Plaintiff avers that Defendants were careless, reckless and negligent ... as follows *inter alia:*

(a) failing to fully and properly instruct their employees agents and/or servants including, but not limited to, the bouncer involved in this incident in how to behave and perform the duties of their employment ...

(b) failing to provide adequate security to protect the safety and health of those patrons ...

(c) failing to intervene with or halt the actions of their servants, workmen and/or employees which did result in injury to the plaintiff

(d) failing to instruct their employees including, but not limited to the bouncer involved in the incident not to assault and batter persons ...

(e) failing to prevent the incident in question;

(f) failing to properly and adequately hire, train, supervise and/or control their employees, servants and/or agents ...

(g) failing to maintain proper control over its employees ...

(h) failing to warn plaintiff; and

(i) otherwise failing to exercise due care under the circumstances.

Compl. at 3, 5–6. Stated succinctly, Barton seeks recovery from the insureds for their employee's intentional tort on the alternate grounds of (a) respondeat superior, and (b) the insureds' negligent, reckless and/or careless failure to prevent or stop their employee's assault and battery.

### D. Duty to Defend Assault and Battery Claims

■ Virtually all Pennsylvania courts that have considered the issues presented here in the context of similar policy provisions and claims have determined that an insurer does not owe its insured restaurant/bar a defense or indemnification. *See, e.g., North Carolina Ted, Inc.,* 715 F.Supp. 688, 691–92 (E.D.Pa. 1989) (citing *Gene's Restaurant, Inc. v. Nationwide Ins. Co.,* 519 Pa. 306, 548 A.2d 246 (1988)); *Thee Kandy Store, Inc.,* 679 F.Supp. 476 (E.D.Pa.1988); *Grzeskiewicz,* 433 Pa.Su-

per. 55, 639 A.2d 1208, 1211–12 (1994). These cases have embraced the arguments that: (a) an assault and battery is an *intentional* tort and, therefore, damage caused by such conduct is not within the scope of a policy that covers "occurrences" or accidents; and (b) assault and battery exclusions that unambiguously exclude coverage for claims alleging a negligent/reckless failure to prevent/stop an assault and battery preclude coverage for the intentionally tortious acts of bar/restaurant employees and patrons. *Id.*

The first argument holds water in this instance. In *Gene's Restaurant,* a case where a patron sought damages from a restaurant for injuries resulting from an assault and battery committed in the restaurant, the Pennsylvania Supreme Court examined the same definition of the term "occurrence" that is at issue here and concluded:

> Under this definition, an "occurrence" is an accident. The willful and malicious assault alleged in the Complaint is not an accident but rather is an intentional tort. As such, it is not covered by the policy and, therefore, the insurer owed no duty to defend.

*Gene's Restaurant,* 548 A.2d at 274. In other words, under Pennsylvania insurance law the intentional torts of assault and battery are not ordinarily considered "accidents." *Id.* In the instant action, no reasonable reading of the Complaint permits the conclusion that Barton's injuries were not the result of the intentional torts of assault and battery. *Grzeskiewicz,* 639 A.2d at 1211. There is no indication that the Ale House's "bouncer/doorman" acted in any manner other than intentionally. *Id.* Thus, Barton's

claims for relief on the basis of respondeat superior—holding the insureds responsible for the intentional acts of their employee/agent—could not potentially come within the coverage of the policy. *Gene's Restaurant,* 548 A.2d at 274; *Air Products,* 25 F.3d at 179.

■ The second argument is also persuasive in this instance. In *Thee Kandy Store,* a case involving facts quite similar to those presented here,[8] the court determined that the assault and battery exclusion precluded coverage even though the underlying complaint alleged a negligent failure to prevent/stop an assault and battery. *Thee Kandy Store,* 679 F.Supp. at 478. The court reasoned:

> Although Mr. Kinsey claims that the defendants in his Common Pleas action were negligent in preventing the assault and battery, this allegation is not sufficient to avoid a properly executed assault and battery exclusion. Regardless of the language of the allegations, the original cause of the harm arose from an alleged assault and battery. Consequently, I find that the assault and battery claim in Mr. Kinsey's Common Pleas action would not be covered by Terra Nova's Insurance due to the assault and battery exclusion.

*Id.* (citations omitted); *see also, St. Paul Surplus Lines Ins. Co. v. 1401 Dixon's,* 582 F.Supp. 865 (E.D.Pa.1984); *North Carolina Ted,* 715 F.Supp. 688; *Grzeskiewicz,* 639 A.2d 1208. Similarly, in *Grzeskiewicz,* the court considered the very same exclusion presented here in the context exhaustive negligence allegations against the bar and its agents.[9] Joint Stip.Ex. C at 9–10. The

---

8. In *Thee Kandy Store,* the complaint at issue alleged that bar employees committed assault and battery and that the bar and its owners were responsible for the resulting injuries on the alternate grounds of respondeat superior and negligent failure to prevent/stop the alleged tortious conduct. *Id.* at 477–79.

9. In the underlying complaint in *Grzeskiewicz,* the plaintiff alleged, in pertinent part:

> The aforesaid accident, and the resulting injuries the plaintiff sustained were caused by the carelessness, recklessness and negligence and gross and wanton disregard of the Defendant Dagwood's Bar through its agents, servants or

employees which negligence consisted of the following:

> (a) permitting the Defendant William Hopania to remain on their premises when they knew or should have known that he had been making threatening gestures, was loud, boisterous and unruly;

> (b) failing to take reasonable measures to prevent the Defendant William Hopania from becoming loud . . .

> (k) failing to properly instruct employees concerning their duties to protect patrons and the methods and procedures to be utilized to provide adequate protection thereof . . .

Joint Stip.Ex. C at 9–10.

court concluded that such "allegations are clearly excluded by the above-quoted assault and battery endorsement to the policy." *Grzeskiewicz,* at 1211. There is no material distinction between the factual and legal allegations in this case and those considered by the court in *Grzeskiewicz.* The assault and battery exclusion clearly precludes coverage for claims arising from "assault and battery or any act or omission in connection with the prevention or suppression of such act" regardless of the degree of culpability or intent and without regard to "the alleged failure of the insured, or his officers, employees ... in the hiring, supervision, retention or control of any person, whether or not an officer, employee ..." Pl.'s Mot.Ex. B.[10] Thus, Barton's claims for relief on the basis the insured's failure to prevent the assault and battery—holding the insureds responsible for their own acts or omissions—could not potentially come within the coverage of the policy. *Grzeskiewicz,* 639 A.2d at 1211–12; *Air Products,* 25 F.3d at 179.[11]

### E.  The Weiner Case

In support of their position that Barton's claims potentially fall within the coverage of the policy, the defendants argue that *Britamco Underwriters, Inc. v. Weiner,* 431 Pa.Super. 276, 636 A.2d 649 (1994) is controlling. Defendants' reliance on *Weiner* is misplaced. First, to the extent that *Weiner* is in conflict with *Grzeskiewicz* and the other cases finding that claims stemming from the intentional torts of assault and battery do not fall within the coverage of policies that limit coverage to "occurrence" and have unambiguous assault and battery exclusions, the cases decided in harmony with *Grzeskiewicz* have the better of the argument. *Grzeskiewicz,*

639 A.2d at 1212 (Beck, J., concurring). Second, the distinction identified by the Pennsylvania Superior Court between *Weiner* and *Grzeskiewicz*—that the underlying tortious conduct alleged in *Weiner* could be considered either intentional or negligent, while the underlying tortious conduct alleged in *Grzeskiewicz* was exclusively intentional— likewise distinguishes this case from *Weiner. Grzeskiewicz,* 639 A.2d at 1210–11.[12] There is no indication that the Ale House's "bouncer/doorman" acted in any manner other than intentionally. *Weiner* does not apply in this instance.

### JUDGMENT

**AND NOW,** this 5th day of April, 1995, it is hereby **ORDERED** that judgment is entered in favor of plaintiff and against the defendants.

---

**10.**  The assault and battery exclusion at issue here is clear and unambiguous, and the insureds cannot complain that their reasonable expectations regarding coverage will be frustrated by the court's enforcement of the exclusion. *Bateman v. Motorists Mut. Ins. Co.,* 527 Pa. 241, 245, 590 A.2d 281, 283 (1991).

**11.**  It is immaterial whether the alleged perpetrators of the assault and battery are employees or third parties. The language of the exclusion plainly indicates that no matter who commits the assault and battery, no coverage will be provided. *North Carolina Ted,* 715 F.Supp. at 690 n. 3.

**12.**  In *Grzeskiewicz,* the court stated:

> This case is distinguishable for our recent decision in [*Weiner*] ... the plaintiff there did not allege that he received his injuries solely as the result of the intentional acts of one or more of the defendants. Specifically, paragraph 23 of the *Weiner* complaint averred that the "defendants (including the bar, the owners of the bar, and an employee) intentionally, recklessly **and/or negligently** performed the aforementioned acts ..."

*Grzeskiewicz,* 639 A.2d at 1211; Joint Stip.Ex. B at 7.